## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

ENDER OSORIO-PIZARRO,

                                                Plaintiff,

          v.                                              9:16-CV-156
                                                          (TJM/ATB)

KIM BURDO, ET AL.,

                                                Defendant.

---

ENDER OSORIO-PIZARRO, Plaintiff, pro se
KAREN FOLSTER LESPERANCE, AUSA, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge.  Plaintiff brought this *Bivens* action claiming that he was denied constitutionally adequate medical care while he was incarcerated at several facilities operated by the Federal Bureau of Prisons. (Complaint ("Compl.")) (Dkt. No. 1).

Presently before the court is defendant Burdo's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 24).  Plaintiff has not responded in opposition to the motion.  For the following reasons, this court recommends denying defendant Burdo's motion to dismiss, but recommends sua sponte dismissal of plaintiff's request for injunctive relief.

### I.   **Facts**

This court previously summarized the facts as alleged by plaintiff in my March 30, 2016 Decision and Order, but will briefly restate the relevant facts here. (Dkt. No.

7, at 2-4). Plaintiff was being held as a pre-sentence detainee at Metropolitan Detention Center ("MDC") Guaynabo in Puerto Rico when he injured his knee playing basketball in November 2012. (Compl. at 8; Dkt. No. 24-3, Foster Lesperance Decl. Ex. A, ("Inmate History Form") at 2[1]). This injury caused him "extreme pain," and made it "extremely difficult" for him to walk. (Compl. at 8). Plaintiff requested an MRI, but unidentified medical staff at MDC Guaynabo denied his request. (*Id.*) Plaintiff was eventually seen by medical staff on April 3, 2013, and again complained of pain and difficulty walking. (*Id.*) He was treated with pain medication, but staff again denied his request for an MRI. (*Id.*)

In July 2013, plaintiff was transferred to Federal Correctional Institution ("FCI") Fort Dix, in New Jersey. (Inmate History Form at 2). Medical staff re-evaluated his knee in October 23, 2013, and referred plaintiff to an orthopedic surgeon. (Compl. at 8-9). An orthopedic surgeon recommended an MRI, which was performed in March 2014. (Compl. at 9). The MRI showed a chronic ACL tear. (*Id.*) On June 3, 2014, a surgeon confirmed the tear and recommended surgery. (*Id.*) Instead, medical staff at FCI Fort Dix treated plaintiff with physical therapy, and his extreme knee pain continued. (*Id.*)

On August 5, 2014, plaintiff was transferred to FCI Danbury, in Connecticut. (Inmate History Form at 1). While there, he was seen by an orthopedist, who recommended knee surgery. (*Id.*) Medical staff at FCI Danbury informed plaintiff that

---

[1] This court has taken judicial notice of this public document, which provides the official timeline of plaintiff's transfer between facilities, and is consistent with the more general timeline presented in the complaint.

he would be scheduled for surgery to repair his ACL, but this surgery did not occur prior to his transfer to FCI Raybrook. (*Id*.)

Plaintiff was transferred to FCI Raybrook in August 2015. (Inmate History Form at 1). During intake, plaintiff advised defendant Burdo that he had experienced knee pain and difficulty walking for the past two years. (Compl. at 9-10). He also explained that he had been scheduled for knee surgery at FCI Danbury. (Compl. at 10). Defendant Burdo told plaintiff that "he was not going to get surgery done at tax payers [sic] expense, and that when he got out of prison he could get the surgery done, and pay for it himself." (*Id*.) As of January 26, 2016, the date of the complaint, plaintiff had not received knee surgery, and experienced "continued pain." (*Id*.)

## II.   **Motion to Dismiss**

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court's consideration is limited to the factual allegations as stated in the complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, and matters of which the court can take judicial notice. *Portillo v. Webb*, No. 16 Civ. 4731, 2017 WL 4570374, at *1 (S.D.N.Y. ) (quoting *Brass v. Am. Film Tech*., 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42,

47-48 (2d Cir. 1991)).  A court may take judicial notice of a public record pursuant to

Fed. R. Evid. 201(b).  *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

## III.  <u>Unidentified Defendants</u>

In addition to defendant Burdo, plaintiff has named "Unknown Federal Prison

Medical Staff" at MDC Guaynabo, FCI Fort Dix, and FCI Danbury as defendants.  To

date, these John and Jane Doe defendants have not been identified or served.  This

court has reminded plaintiff that if he wishes to pursue his claims against these

defendants, he must take "reasonable steps" to ascertain their identities, and that the

action against these unnamed individuals may be dismissed if they are not timely

served. (Dkt. No. 7, at 4; Dkt. No. 14, at 5).  The court has also warned plaintiff that,

because it appears unlikely that any of these unnamed defendants reside in the Northern

District of New York, this court may not be able to exercise jurisdiction over them.

(Dkt. No. 14, at 5).

In light of these warnings, and the two years that have passed since plaintiff filed

his complaint, defendant Burdo has encouraged the court to dismiss all claims against

the *Doe* defendants.  (Dkt. No. 24-1, Def. Br. at 16-18).  Normally, the failure to serve a

defendant within 90 days after the filing of the complaint can result in sua sponte

dismissal after notice to the plaintiff.  Fed. R. Civ. P. 4(m).  My March 30, 2016 order

encouraged plaintiff to use discovery to assist him in the identification of various "Doe"

defendants. (Dkt. No. 7, at 4).  However, there has been no pretrial scheduling

conference or order in this case because of the delays in service on defendant Burdo

and her filing of the instant motion to dismiss, so plaintiff has not had the opportunity

to conduct any discovery.  *See* Fed. R. Civ. P. 26(d) ("A party may not seek discovery

from any source before the parties have conferred as required by Rule 26(f) . . . .")

Defendant Burdo has correctly noted the potential jurisdictional and statute of limitations issues that may prevent plaintiff's claims from proceeding against the Doe defendants in this court. However, dismissal at this early stage of a proceeding, when plaintiff has not yet had an opportunity for discovery or the potential for transfer to another district is unclear, would be premature. *See Minette v. Timer Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal); *Robinson v. Brown*, No. 9:11-CV-758 (TJM/DEP), 2012 WL 6799725, at *21 (N.D.N.Y. Nov. 1, 2012) (Rep't -Rec), *adopted*, 2013 WL 69200, at *1 (N.D.N.Y. Jan. 4, 2013) ("The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is 'to eliminate impediments to the timely disposition of cases and controversies on their merits.") Therefore, this court recommends denial of defendant Burdo's motion to dismiss the claims against unidentified medical staff at MDC Guaynabo, FCI Fort Dix, and FCI Danbury.

## IV.    **Defendant Burdo's Motion to Dismiss**

This court will now address defendant Burdo's motion to dismiss plaintiff's Eighth Amendment medical indifference claim for failure to state a constitutional cause of action.[2]

---

[2] As noted above, the Doe defendants have not yet been identified or served, and therefore cannot move to dismiss. Defendant Burdo has provided a copy of plaintiff's inmate history, that shows that he was a pre-sentence detainee while housed at MDC Guaynabo, and then transferred to FCI Fort Dix after sentencing. (Inmate History at 2). Because his status as a pre-sentencing

### A.   Legal Standards

#### 1.   Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

detainee meant that he was not being "punished," the "cruel and unusual punishment" proscription of the Eighth Amendment does not apply to his treatment at MDC Guaynabo. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). Instead, that claim would be analyzed under the Fifth Amendment Due Process Clause. *Id.* In practice, the analysis of medical indifference claims under the Fifth and Eighth Amendment is identical. *Id.* Therefore, while the particular facts differ, the legal analysis of defendant Burdo's motion would also be applicable to the medical indifference claims against the Doe defendants.

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon. Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058 (GLS/ATB), 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### 2. Medical Care

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### a. Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate

medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### b.    Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).  In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care.  *Id.* (citing *Farmer*, 511 U.S. at 835–37).  Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition.  *Id.*  Deliberate indifference is equivalent to subjective recklessness.  *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety.  *Id.* (citing *Chance*, 143 F.3d at 702).  The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference.  *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent."  *Farmer*, 511 U.S. at 844.  The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable."  *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim.  *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).  Prison officials have broad

9

discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

### B.    Application

#### 1.    Personal Involvement

Taking the facts stated in plaintiff's complaint as true, and drawing all inferences in plaintiff's favor, as the court must at this early stage of the case, defendant Burdo was aware of the medical recommendation that plaintiff receive knee surgery, and affirmatively rejected it. (Compl. at 9-10). The allegations in the complaint are thus sufficient to maintain the action against defendant Burdo. *See Colon v. Sawyer*, No. 9:03-CV-1018 (LEK/DEP), 2006 WL 721763, at *11 (N.D.N.Y. March 20, 2006) (attribution of specific acts and omissions to defendants was sufficient to implicate their personal involvement); *see also Rodriguez v. Fed. Bureau of Prisons*, No. 9:10-CV-1013 (LEK/TWD), 2012 WL 6965109, at *9 (N.D.N.Y. Nov. 30, 2012) (Rep't-Rec), *adopted* 2013 WL 375537 (N.D.N.Y. Jan. 30, 2013) (denying motion to dismiss where allegation that medical director had denied authorization of plaintiff's knee surgery adequately asserted personal involvement).

In support of her motion, defendant Burdo has requested that the court take judicial notice of her official job description as a Health Services Administrator for the Bureau of Prisons, and find that she lacked the authority to determine the manner of plaintiff's medical care. (Dkt. No. 24-4). This job description, on its own, does not

alter the analysis.  First, the document only provides a general description of the position for the Bureau of Prisons, and does not provide any information on the job as actually performed by defendant Burdo.  In addition, plaintiff's allegation that defendant Burdo denied his knee surgery for financial or budgetary reasons is plausible in light of the administrative duties outlined in the document.

Of course, denial of this motion to dismiss would not preclude defendant Burdo from demonstrating a lack of personal involvement in a properly supported motion for summary judgment or at trial.  *See, e.g,* *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) (granting summary judgment where undisputed facts showed that prison administrator was not a medical doctor who could intervene in plaintiff's treatment).

## 2.    Medical Care

Defendant Burdo argues that plaintiff has failed to allege that he has a serious medical need, and has also failed to properly state a claim that defendant Burdo or any of the unidentified defendants were deliberately indifferent to any serious medical need. (Dkt. No. 24, Def. Br. at 7-11).  However, at this stage of the proceeding, plaintiff has adequately alleged both the objective and subjective components of this claim, for the reasons set forth below.  Therefore, this court recommends denial of defendant Burdo's motion to dismiss.[3]

---

[3] In support of this motion to dismiss, defendant Burdo cites a series of cases in which courts granted summary judgment after determining that a knee injury was not sufficiently serious, or that denial of surgery was reasonable under the circumstances. (Def. Br. at 8-9). Denial of this motion would not preclude defendant Burdo from raising similar arguments in a properly supported motion for summary judgment.

### a.    Objective Element

Plaintiff alleged that defendant Burdo ignored multiple medical recommendations that his torn ACL required knee surgery. (Compl. at 9-10).  Read in the most favorable light,  plaintiff has thus alleged that a "reasonable doctor" would find plaintiff's knee injuries "important and worthy of comment." *Salahuddin,* 467 F.3d at 280.  This supports his claim that his injury and the need for surgery were "sufficiently serious." *See Rodriguez*, 2012 WL 6965109, at *9 (knee problems were sufficiently serious where two orthopedic surgeons opined that surgery was necessary); *Taylor v. Cherverko*, No. 15-CV-444 (VB), 2016 WL 29630, at *6 (S.D.N.Y. Jan. 4, 2016) (allegation of improper denial of knee surgery satisfied objective component where plaintiff alleged that an examining surgeon opined that knee surgery was necessary).  In addition, plaintiff claims that his knee made it difficult to walk, which would "significantly affect [his] daily activities." *Salahuddin,* 467 F.3d at 280 (quoting *Chance*, 143 F.3d at 702)).

### b.    Subjective Element

Intentionally ignoring "the medical recommendations of plaintiff's treating physicians," can constitute deliberate indifference. *Dotson v. Fischer*, 613 F. App'x 35, 38 (2d Cir. 2015) (summary order) (subjective component satisfied where defendants ignored a medical evaluation indicating that plaintiff needed surgery); *Rodriguez*, 2012 WL 6965109, at *10 (subjective component satisfied where defendant was denied knee surgery despite an MRI showing significant damage and a request to authorize surgery).

In his complaint, plaintiff alleged that defendant Burdo was aware of physician recommendations that he required knee surgery, but denied it in order to reduce

"taxpayer expense." (Compl. at 9-10). At this early stage of the litigation, plaintiff has adequately alleged that defendant Burdo acted with deliberate indifference to his serious medical needs. *See Stevens v. Goord*, 535 F. Supp. 2d 373, 388 (S.D.N.Y. 2008) ("While disagreements regarding choice of treatment are generally not actionable under the Eighth Amendment, judgments that have no sound medical basis, contravene professional norms, and appear designed simply to justify an easier course of treatment (in this case, no treatment) may provide the basis of a claim.); *see also Poole v. Armor Corr. Health Svcs*., 2016 WL 1089350, at *5 (E.D.N.Y. March 21, 2016)(denying motion to dismiss where plaintiff plausibly alleged that defendants knew of his severe knee pain and difficulty walking but decided not to get him medical treatment).

## V.    <u>Qualified Immunity</u>

### A.    **Legal Standards**

The doctrine of qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining if a particular right was clearly established, the Court "looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *K.D. ex rel Duncan v. White Plains School Dist*., No. 11 Civ. 6756, 2013 WL 440556, at *10 (S.D.N.Y. Feb. 5, 2013) (citing *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011)). The court must ask whether the right at issue was established "'in a particularized sense so that the contours of the right [were] clear to a reasonable

official'" in light of the specific context of the case, "not as a broad general proposition." *Id*. (citing, *inter alia, Reichle v. Howards*, 566 U.S. 658, 665 (2012)). A case directly on point is not required, and the question is not whether an attorney would learn about the right from researching case law, but whether existing precedent has "placed the statutory or constitutional question beyond debate." *Id*. (citing, *inter alia, Fabrikant v. French*, 691 F.3d 193, 213 (2d Cir. 2012)). Only Supreme Court and Second Circuit precedent, existing at the time of the alleged violation is relevant in deciding whether the right is well established. *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004).

### B. Application

For qualified immunity to bar a claim at the Rule 12(b)(6) stage, "[n]ot only must the facts supporting the defense appear on the face of the complaint, . . . but, as with all Rule 12(b)(6) motions, . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). The Eighth Amendment deliberate indifference standard was clearly established at the time of the events alleged in the complaint. *See Farmer*, 511 U.S. at 834-40; *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). In addition, as set forth above, the allegations in plaintiff's complaint are sufficient to establish a plausible Eighth Amendment claim at this stage of the proceeding. While this court does not recommend a finding of qualified immunity at this time, such recommendation does not preclude the invocation of this defense at a later stage of this proceeding.

## VI.  Request for Injunctive Relief

Plaintiff filed his complaint while housed at FCI Raybrook. (Compl. at 1).  In his request for relief, plaintiff sought "an injunction compelling defendant Ms. Bardo [sic] schedule surgery with an outside surgeon to repair the ACL tear in his knee." (Compl. at 10).  In April 2016, plaintiff notified the court that he had been transferred back to MDC Guaynabo. (Dkt. No. 8).  In June 2017, plaintiff notified the court that he had been released from custody, and was residing in Puerto Rico. (Dkt. No. 12).

In order for a case to remain within the jurisdiction of a federal court, an actual controversy must exist throughout the pendency of the litigation, not merely at its commencement.  *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996).  "A case is deemed moot where the problem sought to be remedied has ceased, and where there is 'no reasonable expectation that the wrong will be repeated.'" *Id.* at 506 (quotation omitted).

Plaintiff's transfer out of FCI Raybrook, and his subsequent release from incarceration, mooted his claim for injunctive relief against defendant Burdo.  *See Brown v. Williams*, No. 95-CV-3872 (SJ), 1998 WL 841638, at *2 (E.D.N.Y. Dec. 2, 1998) (transfer from federal detention facility mooted request for injunctive relief); *see also Green v. Harris*, No. 6:15-CV-6554, 2017 WL 2364410, at *2 (W.D.N.Y. May 31, 2017) (citing *Pugh v. Goord*, 571 F. Supp. 2d 477, 490 (S.D.N.Y. 2008) (finding that a plaintiff's claims for injunctive relief against prison officials was moot in light of plaintiff's release from prison)).  Therefore, this court recommends sua sponte dismissal

of plaintiff's request for an injunction against defendant Burdo.[4]

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion to dismiss (Dkt. No. 24) be

**DENIED**, and it is further

**RECOMMENDED**, that plaintiff's request for injunctive relief (Dkt. No. 1) be

dismissed sua sponte as moot.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary*

*of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

FED. R. CIV. P. 6(a), 6(e), 72.


Dated:        October 19, 2018

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

---

[4] Although defendant Burdo did not directly raise this issue in her motion, 28 U.S.C. 1915(e)(2)(B)(ii) provides that the court may dismiss an in forma pauperis action sua sponte at any time if the court determines that, *inter alia*, the action fails to state a claim on which relief can be granted.