## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

ENDER OSORIO-PIZARRO,

                              Plaintiff,

      v.                                         9:16-CV-0156
                                                  (TJM/ATB)

UNKNOWN FEDERAL PRISON MEDICAL
STAFF, et al.,

                              Defendants.

ENDER OSORIO-PIZARRO, Plaintiff, pro se
KAREN FOLSTER LESPERANCE, Asst U.S. Attorney for Defendant Burdo

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  Plaintiff brings this action pursuant to *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), alleging that defendants violated his constitutional right to adequate medical care. (Complaint ("Compl.")) (Dkt. No. 1).  Presently before the court is defendant Kim Burdo's motion for summary judgment dismissing the complaint in its entirety, pursuant to Fed. R. Civ. P. 56. (Dkt. Nos. 57-59).  Plaintiff filed a response in opposition to the motion on February 22, 2021. (Dkt. No. 63).

## I.  <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir.

2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

Local Rules of the Northern District of New York require that a motion for summary judgment be accompanied by a statement of material facts which sets forth, in numbered paragraphs, "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." Local Rule 56.1(a).[1]  The

---

[1] Previously Local Rule 7.1(a)(3).

same rule requires the opposing party to file a response to the moving party's statement of material facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issues arise.  Local Rule 56.1(b).  The rule specifically provides that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.*

## II.   **Factual Contentions**

In 2012, plaintiff was confined at Metropolitan Detention Center ("MDC") Guaynabo in Puerto Rico as a pre-trial detainee.  On November, 23, 2012, he presented to medical staff with complaints of right knee pain and swelling after he fell playing basketball.  (Declaration of Kimberly Burdo ("Burdo Decl.") ¶ 18, Ex. 4).  Plaintiff's knee was wrapped in an ace bandage, and he was provided an injection of Toradol and ibuprofen.  (*Id.*).  The medical staff also ordered an x-ray of plaintiff's knee, which was "negative except for joint effusion." (*Id.* ¶¶ 18-19, Ex. 5).

On May 30, 2013, Plaintiff was moved from MDC Guaynabo and ultimately transferred to Federal Correctional Institution ("FCI") Fort Dix in New Jersey.[2]  (*Id.* ¶ 20, Ex. 6).  Plaintiff first sought medical care for his knee at FCI Fort Dix on October 23, 2013.  (*Id.* ¶ 21, Ex. 7).  He was prescribed Meloxicam and placed on "call out" to be seen in the orthopedic clinic.  (*Id.*).  Plaintiff was evaluated by the orthopedist on

---

[2] It appears that plaintiff was transferred out of MDC Guaynabo subsequent to his conviction and sentencing.  (Declaration of Karen Folster Lesperance ("Lesperance Decl.") Ex. 2 ("Pl.'s Deposition") at 44).

3

November 14, 2013, who noted that plaintiff reported pain but had full range of motion and no evidence of effusion. (*Id.* Ex. 8). An MRI was recommended to rule out a medial meniscus tear, and the test was performed on March 10, 2014. (*Id.* ¶¶ 22-23, Exs. 8, 9). The MRI indicated a small effusion and "nonvisualization [of] ACL[3] [that] could represent chronic ACL tear." (*Id.* Ex. 9).

On May 27, 2014, plaintiff was seen in the chronic care clinic to follow up on the MRI results. (*Id.* ¶ 24, Ex. 10). He was prescribed Meloxicam and referred to the orthopedist. (*Id.*). The orthopedist confirmed that plaintiff had a right knee ACL tear, and recommended ACL reconstruction surgery. (*Id.* ¶ 25, Ex. 11). A request for surgical approval was submitted, and the Utilization Review Committee ("URC") at FCI Fort Dix approved the request on July 25, 2014. (*Id.* ¶¶ 26, 27, Ex. 12, 13).

Before any further steps were taken in the process to approve plaintiff for surgery,[4] plaintiff was transferred to FCI Danbury. (*Id.* ¶ 28, Ex. 6). Plaintiff was seen in the chronic care clinic at FCI Danbury on August 7, 2014 for follow up on his right knee. (*Id.* ¶ 29, Ex. 14). The examining physician submitted a consult request to have plaintiff evaluated by an orthopedic surgeon. (*Id.*). Plaintiff was scheduled to be seen at the orthopedic clinic on September 25, 2014, but claims that for reasons outside his control, medical staff sent him back to his housing unit before he could be seen.

---

[3]The ACL attaches the front of the tibia with the back of the femur, and functions to prevent hyperextension of the knee. It is subject to injury especially by tearing. *See* https://www.merriam-webster.com/dictionary/anterior%20cruciate%20ligament

[4] The Board of Prisons ("BOP") maintains guidelines relating to the management of ACL injuries, which sets forth a five-step process for managing ACL injuries and determining whether transfer to a higher level medical facility and/or surgery is warranted. (Burdo Decl.¶¶ 14-15, citing Ex. 3 at 5). It appears that URC approval is step two of the process. (*Id.*).

(Lesperance Decl. Exs. 3, 4, 8; Pl.'s Deposition at 59).

In October and November of 2014, plaintiff filed various administrative grievances/claims complaining about the delayed surgery and allegedly inadequate medical care. (Lesperance Decl. Exs. 5, 6, 7). On December 29, 2014, FCI Danbury Warden H. Quay responded to plaintiff's complaints, noting that plaintiff was a "no show" to his last orthopedic appointment and that he would need to be evaluated by the orthopedic specialist prior to being scheduled for surgery. (*Id*. Ex. 8).

Plaintiff was seen for an orthopedic consultation on or about April 23, 2015, where it was recommended that he be transferred to the Federal Medical Center in Massachusetts for surgery. (Burdo Decl. ¶ 30, Ex. 15). The recommendation was reviewed by mid-level provider Cesar Villa on May 14, 2015, and was referred to the FCI Danbury Clinical Director ("CD") for approval. (*Id*. ¶ 31, Ex. 16). Plaintiff was seen by the CD for pre-operative clearance on June 8, 2015. (*Id*. ¶ 33, Ex. 18).

On August 13, 2015, plaintiff was transferred to FCI Ray Brook, a medium security institution, as the result of disciplinary charges stemming from the discovery of Suboxone in his cell at FCI Danbury.[5] (Burdo Decl. Exs. 6, 27; Lesperance Decl. Ex. 9). Plaintiff submitted to a health screening upon arrival to FCI Ray Brook, and on August 14, 2015 nurse practitioner ("NP") K. Sorrell conducted a review of his medical chart. (Burdo Decl. ¶¶ 37-38, Exs. 20, 21). She noted that plaintiff should have been a medical hold at his prior institution, and indicated that he should be redesignated as a

---

[5] According to the evidence, Suboxone was discovered in plaintiff's cell at FCI Danbury on February 27, 2015. (Burdo Decl. Ex. 27). It is unclear why plaintiff was not transferred to a higher level security institution until almost six months after the disciplinary incident.

care level two.[6] (*Id.*).

NP Sorrell met with plaintiff on August 19, 2015 for a history and physical exam. (Burdo Decl. ¶ 39, Ex. 22).  After the examination, Sorrell amended her August 14th note to indicate that, although plaintiff should have been a medical hold at his prior institution, "at this time, [he] will remain a CARE 1."[7]  (Burdo Decl. ¶ 39, Ex. 23).

On or about December 30, 2015, plaintiff filed an administrative request that his ACL reconstruction surgery be rescheduled.  (Burdo Decl. ¶ 46, Ex. 26).  The request was referred to FCI Ray Brook Health Services Administrator ("HSA"), defendant Kimberly Burdo, R.N., for a response.  (*Id.*).

Upon receipt of plaintiff's request, HSA Burdo reviewed plaintiff's medical records to learn his history of treatment in federal custody.  (*Id.*).  On January 7, 2016, HSA Burdo responded to plaintiff's request, directing that he be made a medical care level two so that the process for clearing him for surgery and transferring him to a medical facility could be continued.  (*Id.*).  As a result of HSA Burdo's determination, plaintiff's case manager submitted a request for plaintiff to be transferred to a care level

---

[6] Each inmate within the federal prison system is assigned a care level between one and four, depending on the amount of medical care and treatment they need and whether they have any medical conditions, with "one" being the lowest level of medical care and "four" being the highest.  Each facility is designated using the same numbering system to indicate what care level of inmates may be housed there.  (Burdo Decl. ¶ 4 n. 1).  FCI Ray Brook is a care level one facility, and "not equipped for inmates needing ACL reconstruction surgery."  (*Id.* ¶ 49).

[7] Defendant Burdo cannot attest to why the decision was made in August 2015 that plaintiff would remain a care level one, but affirms that she had no involvement in that decision.  (Burdo Decl. ¶ 40).  The court notes that plaintiff was released from custody approximately six months later (Lesperance Decl. Ex. 6), and recognizes the FBP's policy that transfer to a higher level medical facility for treatment of an ACL injury "usually will not be considered for inmates with . . . insufficient time remaining on their sentence to accomplish appropriate assessment and treatment (at least 12-18 months)."  (Burdo Decl. ¶ 16, quoting Ex. 3 at 3).

two facility. (*Id.* at ¶ 47). The transfer request was denied on January 13, 2016, because plaintiff had been referred to the U.S. Attorney's Office for prosecution based on the previously mentioned discovery of drugs in his cell at FCI Danbury. (*Id.* ¶ 47, Ex. 27). The U.S. Attorney ultimately declined to prosecute plaintiff for the drug-related incident at FCI Danbury, and the related disciplinary charges were expunged. (*Id.* ¶ 48, Ex. 27). Thus, on February 16, 2016, another request was made to transfer plaintiff to a care level two facility. (*Id.*). Plaintiff was never transferred, however, as he was released from custody a month later on March 11, 2016. (*Id.* ¶ 43, Ex. 6).

## DISCUSSION

### III.  <u>Defendant HSA Burdo</u>

#### A.  Legal Standards

##### 1.  Personal Involvement

It has long been established that *Bivens* relief is available only against federal officers who are personally liable for the alleged constitutional violations. *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1860 (2017); *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009)). Vicarious liability is inapplicable to *Bivens* suits, as government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 671 (citing *inter alia Dunlop v. Munroe*, 7 Cranch 242, 269 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); *Robertson v. Sichel*, 127 U.S. 507, 515–516 (1888) ("A public officer or agent is not responsible for

7

the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties")).

Recently, in the context of the appeal of a qualified immunity issue, the Second Circuit specifically revisited its standard for determining personal involvement or supervisory liability pursuant to *Iqbal,* articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020).[8]  Joining other circuits, the Second Circuit held that there is no "special" rule for supervisory liability. *Id*.

> Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 . . . . "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id*. The violation must be established against the supervisory official directly.

*Id*. (alteration in original) (quoting *Iqbal*, 556 U.S. at 676).  Quoting a 10th Circuit case, the *Tangreti* court stated that "'after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that as a supervisor he behaved knowingly

---

[8] *Iqbal* involved the analysis of a *Bivens* cause of action, but there the Court made clear that the standard for determining personal involvement remains the same no matter whether plaintiff seeks redress against a federal official, or against a state agent in an action brought under 42 U.S.C. § 1983. 556 U.S. at 675-76 ("In the limited settings where *Bivens* does apply, the implied cause of action is the federal analog to suits brought against state officials under [§ 1983].") (internal quotations omitted). The Second Circuit has likewise applied the standard interchangeably.  *See Tangreti,* 983 F.3d at 616 ([B]ecause vicarious liability is inapplicable to *Bivens* & § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, *unless that is the same state of mind required for the constitutional deprivation he alleges*.'" *Id.* (alterations in original) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) (internal quotation marks omitted) (emphasis added, other citations omitted)).  The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.*  Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

### 2.    Medical Care

The standard for medical treatment under *Bivens* is the same as that used in cases brought under 42 U.S.C. § 1983. *See Gonzalez v. Hasty*, 802 F.3d 212, 221 (2d Cir. 2015) (applying section 1983 standard to *Bivens* action).  In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind.  *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### a.    Objective Element

There is a two part inquiry to determine whether an alleged deprivation is

"objectively serious." *Benjamin v. Pillai,* 794 F. App'x 8, 11 (2d Cir. 2019) (citing *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)).  The first question is whether the plaintiff was actually deprived of adequate medical care.  *Id.*  Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Salahuddin*, 467 F.3d at 279-80 (citing *Farmer v. Brennan*, 511 U.S. 825, 844-47 (1994)).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Benjamin v. Pillai*, 794 F. App'x at 11 (citing *Salahuddin*, 467 F.3d at 280).  The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff.  *Salahuddin*, 467 F.3d at 280 (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)).  If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious."  *Id.* (citing *Smith*, 316 F.3d at 185-86).  However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower.  *Id.*  If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone.  *Benjamin v. Pillai*, 794 F. App'x at 11.  The court in *Benjamin* reiterated that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to

establish constitutional liability. *Benjamin*, 794 F. App'x at 11 (citing *Smith*, 316 F.3d at 185).

### b.    Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Benjamin*, at 11 (citing *Hathaway v. Coughlin*, 511 U.S. 825, 553 (2d Cir. 1996)).  In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 835-37).  Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition, that the charged official possessed "'a state of mind that is the equivalent of criminal recklessness.'" *Benjamin* at 11, (quoting Hathaway, 99 F.3d at 553).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety.  *Abreu v. Lipka,* 778 F. App'x 28, 32 (2d Cir. 2019) (quoting *Smith,* 316 F.3d at 184).  The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer*, 511 U.S. at 837).  The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent."  *Farmer*, 511 U.S. at 844. The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively

unreasonable, a defendant's mental state may be nonculpable." *Salahuddin*, 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Riddick v. Maurer,* 730 F. App'x 34, 38 (2d Cir. 2018) (quoting *Chance*, 143 F.3d at 703). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.; see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983 or *Bivens*.

### B.    Application

Defendant argues that HSA Burdo's individual actions did not violate plaintiff's constitutional right to adequate medical care. (Defendant's Memorandum of Law

("MOL") at 12) (Dkt. No. 57-2).  At his deposition, plaintiff testified that Burdo's culpable conduct included failing to listen to and dismissing his complaints regarding the delayed surgery.  (Pl.'s Deposition at 71-72).  Plaintiff complained that Burdo was "grumpy," did not deserve to work at FCI Ray Brook, and failed to take the opportunity to listen to plaintiff's situation.  (*Id.*).  Notwithstanding plaintiff's testimony, it is clear based on the evidence before this court that HSA Burdo's individual conduct did not rise to the level of deliberate indifference to a serious medical need in violation of the Eighth Amendment.

First, it is undisputed that HSA Burdo was not involved in plaintiff's medical treatment at any time prior to his arrival at FCI Ray Brook in August 2015.  Thus, to the extent plaintiff alleges harm stemming from any constitutionally deficient medical care prior to that date, HSA Burdo may not be held personally liable.  Furthermore, HSA Burdo had no part in the decision to transfer plaintiff from FCI Danbury to FCI Ray Brook – a care level one institution that was not capable of providing knee surgery to plaintiff.  Accordingly, HSA Burdo cannot be held responsible for any delay in surgery as a result of plaintiff's transfer from FCI Danbury to FCI Ray Brook, regardless of whether it interfered with his surgical approval process.

Otherwise, the record does not support the inference that HSA Burdo personally knew of and disregarded plaintiff's serious medical need.[9]  The evidence shows that she

---

[9] The court assumes that plaintiff suffered a "serious medical condition" only for the purposes of its analysis of HSA Burdo's personal involvement in the alleged constitutional violation.  In recommending that the district court dismiss the complaint against HSA Burdo for lack of personal involvement, the court does not reach the merits of whether plaintiff's allegations satisfy the objective element of an Eighth Amendment claim for denial of adequate medical care.

13

first became aware of plaintiff's complaints about the delayed surgery upon receipt of plaintiff's administrative remedy request in December 2015.  HSA Burdo took action on plaintiff's request within approximately seven days – acknowledging that plaintiff should have been under a medical hold at his prior institution and redesignating him as a care level two in order to continue the process for his surgical clearance.  As a result of Burdo's determination, plaintiff's case manager submitted a request for transfer, but the request was denied because of plaintiff's pending disciplinary action.  The transfer request was renewed in February 2016, after the disciplinary charges were expunged, but plaintiff was released from custody only a few weeks later.  Nevertheless, the evidence reflects that HSA Burdo timely responded to plaintiff's complaint, and resolved, in plaintiff's favor, to move him to a higher care level facility in order to obtain surgical approval.[10]

Plaintiff has failed to raise a question of fact as to how HSA Burdo's resolution of his administrative request amounted to a constitutional violation.  HSA Burdo attests that, in her administrative role, she did not have the unilateral authority to approve plaintiff for surgery. (Burdo Decl. ¶¶ 50-51). Likewise, there is no indication that HSA Burdo had any involvement in or control over the decision to deny plaintiff's transfer to a care level two facility, nor did she have any control over the status of plaintiff's disciplinary proceedings.  Even assuming these actions thwarted plaintiff's opportunity to have surgery and amounted to deliberate indifference to plaintiff's serious medical

---

[10] According to HSA Burdo's review of plaintiff's medical records, there were several steps remaining in the process of approving plaintiff for surgery, per the BOP guidelines.  (Burdo Decl. ¶¶ 14-15, 50).

14

need, HSA Burdo may not be held personally responsible for them. *See Jackson v. Sheehan*, No. 16-CV-6710, 2021 WL 795313, at *6 (W.D.N.Y. Mar. 2, 2021) ("Thus, [the defendants], having performed their functions with respect to plaintiff's complaint to the limits of their authority, 'had no further responsibility to resolve it.'") (quoting *Tangreti*, 983 F.3d at 620 n. 7).

Accordingly, the court recommends dismissal of the complaint against HSA Burdo based on her lack of personal involvement in any conduct which may have risen to the level of an Eighth Amendment violation.

IV.    **Doe Defendants**

Plaintiff's complaint raises allegations of constitutionally deficient medical care against "unknown medical staff" at MDC Guaynabo, FCI Fort Dix, and FCI Danbury. (Compl. at 1-2). Counsel previously moved to dismiss the complaint against these unnamed defendants in a May 25, 2018 pre-answer motion. (Dkt. No. 24). That motion was referred to me, and Judge McAvoy adopted my report and recommendation denying the request as premature, inasmuch as plaintiff had not yet had the opportunity to conduct discovery to ascertain the Doe defendants' identities. (Dkt. Nos. 26, 30). Defense counsel presently renews the request that this court dismiss the complaint against the unnamed defendants, arguing that the discovery deadline has passed and plaintiff has failed to amend his complaint. For the following reasons, the court agrees that dismissal of the complaint against these defendants is now warranted.

A.    **Legal Standard**

"It is a general principle of tort law that a tort victim who cannot identify the

tortfeasor cannot bring suit." *Bishop v. City of New York*, No. 13-CV-9203, 2016 WL 4484245, at *3 (S.D.N.Y. Aug. 18, 2016) (quoting *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997)). Courts generally decline to dismiss actions against John Doe defendants, however, until the plaintiff has had the opportunity for discovery to learn the identity of the allegedly responsible officials. *Cruz v. Fischer*, 175 F. Supp. 3d 33, 38 (W.D.N.Y. 2016). Nevertheless, "if a plaintiff is unable to identify defendants after being afforded the opportunity for limited discovery with assistance from the Court, his claims must be dismissed." *Bishop v. City of New York*, 2016 WL 4484245, at *3; *see e.g., Epps v. City of Schenectady*, No. 1:10-CV-1101 (MAD/CFH), 2013 WL 717915, at *4 (N.D.N.Y. Feb. 27, 2013) ("All discovery is complete and thus, plaintiff's failure to identify the "John Doe" defendant mandates dismissal."); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, No. 04-CV-2293, 2007 WL 74304, at *5 n.7 (E.D.N.Y. Jan. 8, 2007) ("Fictitious parties must eventually be dismissed, if discovery yields no identities." (brackets omitted) (citation omitted)); *Perrelli v. City of E. Haven*, No. 3:02 CV 0008, 2004 WL 1202718, at *3 (D. Conn. May 28, 2004) ("[I]f after the completion of discovery, the plaintiff is not able to identify the actual names of the John Doe defendants, the claims against them must be dismissed").

Moreover, a plaintiff must identify and serve any John Doe defendants prior to the expiration of the statute of limitations governing the cause of action alleged, or those defendants may be dismissed. *Cruz v. Fischer*, 175 F. Supp. at 38 (citing inter alia *Tapia–Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)). "The statute of limitations for *Bivens* actions arising in New York is three years." *Tapia–Ortiz*, 171 F.3d at 152.

**B.    Application**

Since the inception of this case, the court has reminded plaintiff that if he wishes to pursue his claims against the unnamed defendants, he must take "reasonable steps" to ascertain their identities, and that the action against these unnamed individuals may be dismissed if they are not timely served.  (Dkt. Nos. 7 (at 4); 14 (at 5); 26 (at 4)).  To date, plaintiff has not asked to add any named defendants to replace the "unknown medical staff," and there is no indication that he knows who these defendants may be. At his deposition, plaintiff testified that he still did not know the names of the individual medical staff at his each facility responsible for the allegedly deficient medical care provided to him, despite having received his complete medical record in discovery.  (Pl. Deposition at 35-36).

Moreover, the statute of limitations for plaintiff's underlying *Bivens* claim would have expired three years after his cause of action accrued against each Doe defendant; in other words, three years after each "unknown medical staff" member failed to provide plaintiff with adequate medical care.  *See Gonzalez v. Hasty,* 802 F.3d 212, 220 (2d Cir. 2015) ("A *Bivens* claim accrues under federal law for statute of limitations purposes when a plaintiff either has knowledge of his or her claim or has enough information that a reasonable person would investigate and discover the existence of a claim.").  Plaintiff was incarcerated at MDC Guaynabo, FCI Fort Dix, and FCI Danbury between 2012 and 2015.  He was released from FCI Ray Brook to a halfway house on March 11, 2016 and released from all federal custody later in 2016.  (Burdo Decl. Ex. 6).  Thus, in the absence of any extenuating circumstances or tolling, the claims against

any defendant who was involved in or responsible for providing plaintiff with medical care while he was in federal custody clearly would have been time barred after 2019, if not well before then.[11]

Based on the foregoing, it appears that plaintiff has been extended every reasonable opportunity to determine the identities of the Doe defendants, yet has failed to do so. Plaintiff maintains that his pro se status, and the fact that English is not his first language, have presented hardships in litigating this action. (Dkt. No. 63). Although the court is reminded that plaintiff's pro se status affords him some leniency in litigating his claims, this leniency "is not without limits and all normal rules of pleading are not absolutely suspended." *Root v. Pallito*, No. 1:12-CV-70, 2012 WL 5392091, at *2 (D. Vt. Oct. 2, 2012), report and recommendation adopted, 2012 WL 5390502 (D. Vt. Nov. 5, 2012) (quoting *Gil v. Vogliano*, 131 F. Supp. 2d 486, 491 (S.D.N.Y.2001) (citations omitted)). In this case, plaintiff simply cannot maintain his *Bivens* cause of action against the unnamed defendants in perpetuity. Furthermore, plaintiff's language barrier has not prevented plaintiff from participating in this litigation to date, as the docket reflects his adequate ability to draft pleadings, prepare motion papers, and participate in court conferences. *See Pilao Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, No. 12-CV-974, 2012 WL 13195947, at *3 (S.D.N.Y. July 23, 2012) ("Courts have noted that the mere existence of a language

---

[11]As previously discussed in this court's October 19, 2018 report-recommendation (Dkt. No. 26), it also appears unlikely that any of the unnamed defendants reside in the Northern District of New York, considering that they are, or were, employed at federal prison facilities in Puerto Rico, New Jersey, and Connecticut. Thus, it appears likely that the court would not be able to exercise jurisdiction over the Doe defendants in any event.

barrier does not mean that a [P]laintiff will necessarily have difficulty investigating, prosecuting, or presenting his . . . claims . . . . A plaintiff's "difficulty with the English language or the fact that he does not speak English as a first language is not commensurate with an inability to understand English.") (alterations in original) (internal quotations and citation omitted).  Since plaintiff was released from federal custody, he has neither renewed his request that this court appoint him counsel, nor is there evidence that he has attempted to retain private counsel.

Moreover, any attempt by plaintiff at this juncture to amend his complaint to include the identities of the unnamed defendants would be futile.  A plaintiff seeking to add a party after the statute of limitations period has expired must meet the requirements of Federal Rule of Civil Procedure 15(c). Under Rule 15(c)(1)(C), an amended complaint adding a new party relates back to the original complaint only if, among other things, "the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  With respect to this issue, the Second Circuit has specifically held that "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 470 (2d Cir.1995); see *Tapia–Ortiz*, 171 F.3d at 152 ("And even when a suit is brought by a pro se litigant, an amended complaint adding new defendants [cannot] relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.") (internal quotation marks

omitted) (alteration in original).

A handful of courts have applied New York State's relation back law in a *Bivens* action to determine whether an amended pleading naming John Doe defendants outside the statute of limitation period relates back to the date of the original complaint. *See e.g. Rainwater v. U.S.*, No. 08 Civ. 5115, 2010 WL 5248585, at *7 (S.D.N.Y. Dec. 15, 2010); *Williams v. United States*, 07 Civ. 3018, 2010 WL 963474 (S.D.N.Y. Feb. 25, 2010), *report and recommendation adopted*, 2010 WL 963465 (S.D.N.Y. Mar.16, 2010). However, even under New York's more forgiving principle of relation back in the case of Doe defendants, "[t]he [plaintiff's] failure to act diligently to ascertain the unidentified defendant's name subjects the complaint to dismissal as to that party." As previously discussed, plaintiff's failure in this case to make any ascertainable efforts to identify these defendants falls short of even the New York requirements.

Plaintiff had adequate time to identify the Doe defendants during discovery, including the opportunity to demand and receive discovery responses from defendant. Nevertheless, plaintiff never filed an amended complaint naming additional defendants, much less sought additional assistance from the court with respect to this issue. Moreover, the claims against these defendants are time barred under both federal and state law. Accordingly, the complaint should be dismissed as to the Doe defendants.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant Burdo's motion for summary judgment (Dkt. Nos. 57-59) be **GRANTED**, and the plaintiff's complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.


Dated:  March 25, 2021

Andrew T. Baxter
U.S. Magistrate Judge